12 Civ. 6854 (ALC) (FM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. RONALD TONGRING,

                                                    Plaintiff,

-against-

BRONX COMMUNITY COLLEGE of the City
University of New York System, ANTHONY WEAVER,
AND SUSAN FORMAN,

                                                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-112*
*New York, N.Y. 10007*

*Of Counsel: Lawrence J. Profeta & Asad Rizvi*
*Tel: (212) 788-6838*
*Matter No. 2011-013881*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT ................................................................................................................................ 5

    POINT I ..................................................................................................................................... 5

    *THE AMENDED COMPLAINT FAILS TO STATE A CLAIM TO RELIEF THAT IS PLAUSIBLE ON ITS FACE.* ................................................................................................. 5

    CONCLUSION ........................................................................................................................ 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

DR. RONALD TONGRING,

                                 Plaintiff,      12 Civ. 6854 (ALC) (FM)

-against-

BRONX COMMUNITY COLLEGE of the City
University of New York System, ANTHONY
WEAVER, AND SUSAN FORMAN,

                               Defendants.
------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Dr. Ronald Tongring ("plaintiff"), a former Adjunct Professor of Mathematics at defendant Bronx Community College, a community college of the City University of New York ("CUNY"), brings this action pursuant to the (1) Age Discrimination in Employment Act ("ADEA") of 1967, (2) New York State Human Rights Law ("SHRL"), (3) New York City Human Rights Law ("CHRL"), (4) New York Labor Law, (5) a claim for libel/defamation under New York State common law, (6) the Family Educational Rights and Privacy Act ("FERPA") of 1974, (7) the Fair Labor Standards Act (8) Rule 23 class certification against defendants Bronx Community College, Dr. Anthony Weaver, and Dr. Susan Forman. Specifically, plaintiff alleges that defendants discriminated against him on the basis of his age and defamed him by publishing false employee evaluations.

1

Defendants now move to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff fails to plead facts sufficient to state a plausible claim for relief.

## STATEMENT OF FACTS[1]

On or about Spring 2010, Dr. Ronald Tongring (hereinafter "plaintiff") was hired as an Adjunct Professor of Mathematics at Bronx Community College ("BCC"), a community college located in Bronx, New York. See Amended Complaint (hereinafter "Complaint"), ¶¶ 1-2, 8, annexed to the Declaration of Assistant Corporation Counsel Asad Rizvi ("Rizvi Decl."), sworn to on March 8, 2013, as Exhibit "A." Plaintiff was hired by defendant Dr. Anthony Weaver, a CUNY Professor and Chairman of the Department of Mathematics at BCC, to teach two mathematics classes in the Spring 2010 semester. Id., ¶¶ 5, 8.

Plaintiff "kept office hours for each of the two classes, prepared for the classes and, for each course, prepared the weekly quiz, and graded the quizzes, homework, and examinations." See Complaint, ¶ 9. However, plaintiff submits that he was "not compensated for all hours he was required to work." Id., ¶ 10. Plaintiff claims that by letter, dated April 12, 2010, he submitted to defendants a "written demand" for wages owed. Id., ¶ 22. Plaintiff claims that after submitted this letter, he was "retaliated against" by defendant BCC on April 20, 2010, when plaintiff's suspension was "converted to a firing." Id., ¶ 23.

Plaintiff claims that BCC and defendant Weaver failed to "properly communicate" with plaintiff during his employment by failing to place him on the college e-mail system. See Complaint, ¶ 9. Plaintiff asserts that he made several inquiries about being given access to a BCC e-mail account. Id.

---

[1] For the purposes of this motion to dismiss only, the material factual allegations asserted by the plaintiff are deemed to be true.

Plaintiff was given two formal observations by senior faculty. On or about March 24, 2010, defendant Dr. Susan Forman, a Professor of Mathematics at BCC, observed plaintiff's class for 45 minutes. See Complaint, Exhibit "8," ¶¶ 1-2. Plaintiff alleges that the "union contract" required her to stay for the entire 1 hour and 50 minutes of the class. Id. Plaintiff asserts that he telephoned Dr. Forman in advance of the observation to inform her that he would not be teaching until the second hour of the class and would be conducting a make-up exam review session in the first half of the class. Id.

Plaintiff states that Dr. Forman did not stay for the entire class period during her March 24, 2010 observation as required. See Complaint, ¶ 29. Furthermore, plaintiff asserts that Dr. Forman was not permitted to participate in the classroom setting during the observation. Id. Nonetheless, plaintiff asserts that Dr. Forman spoke to a student during the class observation. Id.

Plaintiff claims that Dr. Forman "erroneously concluded" that plaintiff violated the Family Educational Rights and Privacy Act ("FERPA") of 1974. See Complaint, ¶ 30. Plaintiff maintains that FERPA "does not prohibit the discussion of group or individual grades on classroom group projects, so long as the teacher has not yet recorded those individual grades." Id. Plaintiff claims that "[s]imilarly situated adjuncts employed by BCC who were younger than Plaintiff and where not subject to scrutiny for claims of purported FERPA violations." Id.

On or about April 7, 2010, Dr. Anthony Weaver conducted a formal observation of plaintiff's mathematics class. See Complaint, ¶ 23. Plaintiff alleges that Dr. Weaver's observation, too, violated the union contract. Id., Exhibit "8." Plaintiff claims that the observation contained a "series of misrepresentations and error," that Dr. Weaver failed to understand the "handbook rules" and "employment contract," and that he failed to hold a post-observation with plaintiff, where "many of his misconceptions could have been corrected." Id.

Plaintiff alleges that the observation reports of Drs. Forman and Weaver were "patently false" and a pretext for a violation of law. See Complaint, ¶ 33. Plaintiff asserts that their evaluations "both misunderstood and mischaracterized what was going on in the classroom." Id. Plaintiff claims that adjuncts younger in age "were treated differently and better than" plaintiff. Id. Plaintiff asserts that contrary to Dr. Forman's observation, plaintiff does "know what's going on" in his "classroom at all times," and alleges that such a comment suggests age discrimination. See id., Exhibit "8," at "(f)."

Plaintiff asserts that he "was not really observed for the required time, due process was ignored, and [Dr.] Forman disrupted the class by discussing Plaintiff with a student and included in her written criticism age biased remarks." See Complaint, ¶ 29. Further, plaintiff claims that he was not "given a post evaluation conference." Id. Plaintiff claims "younger" adjuncts were not treated similarly to plaintiff. Id.

On April 20, 2010, plaintiff alleges that defendants notified him that he "would not be reappointed." See Complaint, ¶ 23. Further, plaintiff asserted that defendant BCC proposed to pay plaintiff for the "remainder of the semester condition on a 'do not darken my door clause.'" Id. Plaintiff claims this clause would prohibit plaintiff from "ever applying again for work with not only Defendant BCC but with any college in the entire City University of New York system." Id., ¶ 36. Plaintiff alleges that such clauses have been held to be "inherently retaliatory and discriminatory" by the Equal Employment Opportunity Commission ("EEOC"). Id. Plaintiff asserts that such clauses are used by defendant BCC "to retaliate against the Plaintiff and other former adjuncts." Id. ¶ 46.

Plaintiff alleges that following his termination, younger adjuncts were appointed to teach the two courses assigned in Spring 2010. See Complaint, ¶ 35. The replacements were

4

allegedly both "less qualified" than plaintiff and neither held a doctorate in Mathematics. Id. Plaintiff claims that one of the replacements was the individual defendant, Dr. Forman, who allegedly discriminated against plaintiff. Id.

On July 27, 2011, plaintiff filed the original Complaint in the United States District Court for the District of New Jersey. See Docket No. 1.

On May 24, 2012, defendants moved to transfer venue to the Southern District of New York and dismiss the Complaint in its entirety. See Docket No. 12.

On September 5, 2012, the United States District Judge Stanley R. Chesler granted defendants' motion, in part, and issued an Order transferring the instant action to the Southern District of New York. See Docket No. 25.

On November 26, 2012, this Court granted plaintiff leave to file an Amended Complaint. See Docket No. 32.

On January 7, 2013, plaintiff filed the instant Amended Complaint.

## ARGUMENT

### POINT I

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM TO RELIEF THAT IS PLAUSIBLE ON ITS FACE.

A.    **The Applicable Pleading Standard.**

The facts set forth in the complaint "must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. 544, 555 (citation omitted). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." Id. (internal quotation marks and alteration omitted). The Supreme Court recently explained the standard in Ashcroft v. Iqbal stating that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

5

relief that is plausible on its face.'. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

These pleading standards must be read together with the familiar Rule 12(b)(6) admonition that courts may neither (i) "'assume that the [Plaintiff] can prove facts that [he] has not alleged,'" Elec. Comm. Corp. v. Toshiba Am. Consumer Prods., Inc., 129 F.3d 240, 243 (2d Cir. 1997) (quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 [1983]) (alteration in original), nor (ii) "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted). Thus, as the Supreme Court noted, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions." Twombly, 550 U.S. at 555. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 129 S. Ct. at 1949. Therefore, a complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to plead enough facts to demonstrate a plausible entitlement to relief. See Iqbal, 129 S. Ct. at 1949.

**B.     ADEA/SHRL/CHRL Claim**

        (i) Disparate Treatment

To establish a prima facie claim under the ADEA, a plaintiff must demonstrate that "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue Airways

6

Corp., 596 F.3d 93, 107 (2d Cir. 2010) (internal citation omitted); see also Novak v. Posten Taxi, Inc., 386 Fed. Appx. 276, 278 (3d Cir. 2010) (summary order).[2]

Here, all of plaintiff's age discrimination claims are conclusory, unsupported, threadbare, and, consequently, fail to state a plausible claim for which relief can be granted. Plaintiff alleges, in pro forma fashion, that he performed his duties as an adjunct "competently" and was replaced for "no good reason" by "younger workers" who were "less qualified" than plaintiff. See Complaint, ¶ 8. Such threadbare recitals were rejected by the Supreme Court in Iqbal and plaintiff's conclusory complaint should, thus, be dismissed as a matter of law. Iqbal, 129 S. Ct. at 1949.

Plaintiff fails to set forth sufficient facts to show that he suffered an adverse employment action under discriminatory circumstances. Plaintiff alleges simply that senior faculty at BCC were displeased with his teaching performance after conducting two formal observations. Plaintiff's claims about the actual observations constitute nothing more than grievances about the observation process which can be challenged pursuant to the procedures in a collective bargaining agreement. See Kazolias v. IBEW LU 363, 2012 U.S. Dist. LEXIS

---

[2] "Employment discrimination claims brought under the NYSHRL and the NYCHRL also are analyzed using the McDonnell Douglas analysis. E.g., Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009) ('Age discrimination claims brought pursuant to the NYSHRL and NYCHRL are analyzed under the ADEA framework, just as . . . discrimination claims brought pursuant to the NYSHRL, and the NYCHRL are analyzed under the Title VII framework.') (citations omitted)." See Sicular v. N.Y.C. Dep't of Homeless Servs., 2010 U.S. Dist. LEXIS 10089, 49-50 (S.D.N.Y. 2010); Attard v. Bd. of Educ., 2010 U.S. Dist. LEXIS 104802 (E.D.N.Y. 2010), aff'd, 2011 U.S. App. LEXIS 24919 (2d Cir. December 15, 2011), cert. den. ___ U.S. ___ (April 23, 2012) (analyzing New York City Human Rights Law claims separately, but nonetheless granting summary judgment due to plaintiff's failure to prove her termination was caused by discriminatory animus).

183443 (S.D.N.Y. 2012) ("The Supreme Court has required exhaustion of grievance and arbitration procedures as provided in collective bargaining agreements because Congress indicated its preference for such agreed-upon contractual remedies over judicial intervention, and because exhaustion gives unions and employers an opportunity to resolve disputes.") (internal citations omitted). However, plaintiff fails to set forth facts to show that defendants' actions were motivated by discriminatory animus. Perhaps recognizing the futility of his pleading, plaintiff alleges in typical conclusory fashion that Dr. Forman's "written criticism" of his teaching performance included "age biased remarks." See Complaint, ¶ 29. Plaintiff's formulaic pleading is insufficient as a matter of law as it fails to assert a plausible claim. In any event, in an ADEA action, stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001); see also Posner v. Sprint/United Management Co., 478 F. Supp. 2d 550, 559 (S.D.N.Y. 2007) (in ADEA action, isolated remark by non-decisionmaker insufficient to establish discriminatory motive).

Moreover, like the plaintiff in Novak, the Complaint fails to establish any plausible showing that plaintiff was replaced with a person sufficiently younger than him. See Novak, 286 Fed. Appx. at 278. ("We agree with the District Court that Novak did not establish a prima facie case, as he did not show that Posten Taxi replaced him with a person sufficiently younger to permit an inference of age discrimination."). Plaintiff merely alleges in a conclusory fashion that "[u]pon information and belief, [plaintiff's] class was given to someone younger than he was." See Complaint, ¶ 32. Like Novak, plaintiff "failed to offer any evidence as to who replaced him after he was terminated." See Novak, 286 Fed. Appx. at 278; see also Carlton

8

v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination.").

It is well-settled that such conclusory allegations are insufficient as a matter of law to defeat a motion to dismiss. As the Court held in Zucker:

> [Plaintiff] argues that his satisfactory work performance combined with his much younger replacement suffice to render his age discrimination claims more than facially plausible.. . . [B]ut if such barebones allegations sufficed to state a claim, then any time an ADEA-covered employer terminated an employee over age forty, the employer would be unable to replace that employee with someone younger [] without exposing itself to potential liability for age discrimination.

Ochei v. Mary Manning Walsh Nursing Home Co., 2011 U.S. Dist. LEXIS 20542, 7-8 (S.D.N.Y. 2011) (citing Zucker v. Five Towns Coll., 2010 U.S. Dist. LEXIS 85441 [E.D.N.Y. Aug. 18, 2010].). Similarly, here plaintiff mere claim that he was replaced by someone younger fails to state a plausible claim to relief. "To protect employers from precisely this sort of untenable situation, naked assertions by plaintiff that some protected demographic factor motivated an employment decision, without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's membership in a protected class, are simply too conclusory to withstand a motion to dismiss." Ochei, 2011 U.S. Dist. LEXIS 20542, *8 (internal citations omitted).

Even if plaintiff could meet his burden of establishing a *prima facie* case of discrimination, he is unable to show pretext. "If [plaintiff] meets this initial burden of production, [defendants] must identify a legitimate, nondiscriminatory reason for the adverse employment action, at which point [plaintiff] must show that this proffered reason is a pretext for discrimination. Swain v. City of Vineland, 457 Fed. Appx. 107, 110 (3d Cir. 2012). At all

9

times, [plaintiff] bears the burden of persuasion." Id. Clearly, plaintiff was terminated for legitimate non-discriminatory reasons, namely his incompetent pedagogical performance as documented in the classroom observation reports of defendants Dr. Forman and Dr. Weaver.

Plaintiff's mere disagreement with his class observations are of no moment. Plaintiff has failed to identify any basis demonstrating that his age was considered in his termination. Plaintiff's disagreement with the proper method of teaching elementary mathematics is not sufficient to rebut defendants' legitimate non-discriminatory reason for his termination. Moreover, plaintiff's grievances with defendants' criticisms of his performance are age-neutral and display a pattern of incompetent pedagogical performance. Plaintiff's complaint is devoid of any plausible showing that age was considered in terminating his employment. See Iqbal, 129 S. Ct. 1937. In any event, plaintiff's conclusory claims that unnamed younger employees did not receive similar adverse treatment is conclusory and is insufficient to defeat a motion to dismiss. Accordingly, plaintiff's age discrimination claims fail as a matter of law.

(ii) Retaliation

To plead a prima facie case of retaliation under the ADEA, SHRL, and CHRL, a plaintiff must set forth a plausible showing that "1) plaintiff engaged in protected activity; 2) the employer was aware of this activity; 3) the employer took adverse action against the plaintiff; and 4) a causal connection exists between the protected activity, and the adverse action." Uy v. Mount Sinai Hosp., 2012 U.S. Dist. LEXIS 143308, 16-17 (S.D.N.Y. 2012) (internal citation omitted). "A plaintiff engages in protected activity if she has a reasonable belief that [s]he was opposing an employment practice made unlawful by . . . the ADEA." Id. (internal citation and quotation marks omitted). "The same standard applies to retaliation claims under [*15] the

NYSHRL and NYCHRL, at least on a motion to dismiss." Alvarez v. Rosa, 2012 U.S. Dist. LEXIS 25693, 14-15 (S.D.N.Y. 2012).

Here, plaintiff has failed to even show that with even remote plausibility that defendants retaliated against plaintiff. Here, the only arguable facts demonstrating a protected activity are plaintiff's April 16, 2010 "written demand for wages." See Complaint, ¶ 22. However, in no respect does, nor can, plaintiff allege that such written demand was done in effort to "oppos[e] an employment practice made unlawful by...the ADEA." Uy, 2012 U.S. Dist. LEXIS 143308, 16-17. Moreover, even if such written demand was an opposition of an employment practice actionable under the ADEA, plaintiff fails to show any causal connection between the written demand for wages and his ultimate termination. Indeed, plaintiff concedes that his termination was predicated on negative evaluations issued by defendants Dr. Forman and Dr. Weaver. As such, plaintiff fails to set forth any facts that would establish a plausible claim of retaliation.

C.      **Libel/Defamation**

Plaintiff's claim that the employee evaluations were false or defamatory fails as a matter of law. See Complaint, ¶ 54. "Under New York law, a plaintiff seeking to establish a prima facie case for slander or libel must establish the following elements: (a) a false and defamatory statement of and concerning the plaintiff; (b) publication by the defendant of the statement to a third party; (c) fault on the part of defendant; and (d) injury to the plaintiff." See Rafter v. Bank of Am., 2009 U.S. Dist. LEXIS 21542 (S.D.N.Y. 2009) (internal citation omitted). "In New York, with respect to a defamation allegation, a qualified privilege arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or duty to speak, and the communication is made to a person having a corresponding interest or duty." Id. (internal citations and quotation marks omitted).

11

Here, plaintiff complains about the teaching evaluations published by Drs. Forman and Weaver. However, these evaluations were created in the context of an employer's evaluation of plaintiff's performance. Indeed, "courts are reluctant to sustain a claim for defamation for statements made in the context of an employee evaluation or termination because no workplace ... can operate effectively unless the employers and employee who work there have the ability to speak freely in evaluating the actions of their employees and co-employees." Doe v. White Plains Hosp. Med. Ctr. (WPHMC), 2011 U.S. Dist. LEXIS 76076, 9-10 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Because "[a]n employer has the right to assess an employee's performance on the job without judicial interference," the statements that Plaintiff alleges were made orally and in writing are non-actionable. Id. Accordingly, plaintiff's libel/defamation claim fail a matter of law.

D.   **New York Labor Law**

Plaintiff's claims under Labor Law §160, Article 6, and Article 19 fail as a matter of law. See Complaint, ¶51. "New York Labor Law...expressly excludes from its definition of 'employee' those persons employed 'by a federal, state or municipal government or political subdivision thereof.'" See Drayton v. Metroplus Health Plan, Inc., 791 F. Supp. 2d 343, 345 (S.D.N.Y. 2011) (citing N.Y. Lab. Law § 651(5) and 12 NYCRR § 142-2.14). Accordingly, plaintiff's claims under the labor law fail as a matter of law.

E.   **Fair Labor Standards Act.**

Plaintiff's FLSA claim also fails as a matter of law. The FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." Kuebel v. Black & Decker Inc., 643 F.3d 352, 359 (2d Cir. 2011) (internal citation and quotation marks omitted). Plaintiff, however, is a teacher employed by an educational institution and is, therefore, not covered by the FLSA. 29 C.F.R. § 541.303(a). Indeed, "[t]he regulations

12

promulgated under the statute explain that teachers at an educational establishment qualify for the professional exemption." The regulations indicate that an "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also means any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed. Franklin v. Breton Int'l, Inc., 2006 U.S. Dist. LEXIS 88893, 7-8 (S.D.N.Y. 2006) (citing 29 C.F.R. § 541.303[a]).

Here, it is clear that plaintiff was employed as an adjunct professor in the Bronx Community College Department of Mathematics in Spring 2010. As plaintiff concedes, he taught two mathematics courses, maintained off hours for each class, prepared weekly quizzes, engaged in grading, assigned homework, and the gave examinations to his students. See Complaint, ¶ 9. As such, it is clear that plaintiff is exempt from the FLSA and all claims under this statute must be dismissed as a matter of law.

**F.      Family Educational Rights and Privacy Act**

Plaintiff's claim under FERPA is also meritless. To the extent plaintiff even has a private right of action under FERPA, his claim is without merit. The Supreme Court explained the purpose of FERPA as follows:

> "The Act states that federal funds are to be withheld from school districts that have 'a policy or practice of permitting the release of education records (or personally identifiable information contained [*429] therein . . . ) of students without the written consent of their parents.' § 1232g(b)(1). The phrase 'education records' is defined, under the Act, as 'records, files, documents, and other materials' containing information directly related to a student, which 'are maintained by an educational agency or institution or by a person acting for such agency or institution.' § 1232g(a)(4)(A). The definition of education records contains an exception for 'records

13

> of instructional, supervisory, and administrative personnel . . . which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute.' § 1232g(a)(4)(B)(i)."

See Owasso Indep. Sch. Dist. No. I-011 v. Falvo, 534 U.S. 426, 428-429 (2002)

In Falvo, the issue presented was "whether peer-graded classroom work and assignments are education records." Falvo, 534 U.S. at 430. Plaintiff's faulty argument is that there similarly is no prohibition on the dissemination of teacher-graded classroom work. Here, Dr. Forman correctly criticized plaintiff for, among other things, disclosing the name of students while distributing graded work. As such, plaintiff's conduct did run afoul of FERPA and Dr. Forman's observation report was not disingenuous nor a pretext for his termination.

### G. Rule 23 Class Certification

Finally, plaintiff lists in conclusory fashion that the Court should grant him leave to be appointed class representative for a purported class of 100 plus CUNY adjunct in a Rule 23 class action against defendants. See Complaint, ¶ 46. Plaintiff moves for class certification on all of the claims listed in his complaint. Id.

Like the remainder of his claims, plaintiff's claim for Rule 23 class certification is defective as a matter of law. Plaintiff must meet the four-part test found in Rule 23 to certify a proposed class:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Anwar v. Fairfield Greenwich, 2013 U.S. Dist. LEXIS 26088, 25-26 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 23[a]). In addition, under Rule 23(b)(3), plaintiffs must demonstrate "common

14

questions of law or fact 'predominate over any questions affecting individual members' and that maintaining a class action "is superior to other available methods" of adjudication." Id. (citing Fed. R. Civ. P. 23[b][3]). "Trial courts are given substantial discretion in determining whether to grant class certification because the district court is often in the best position to assess the propriety of the class and has the ability…to alter or modify the class, create subclasses, and decertify the class whenever warranted." Id. (internal citations omitted).

Here, plaintiff asserts in a conclusory manner that 100 alleged adjuncts were similarly deprived of their lawful wages, repayment of which was predicated on a "do not darken my door clause." See Complaint, ¶ 52. Unlike Anwar, plaintiffs in the instant action fail to identify a *single* proposed adjunct, apart from plaintiff, who should be considered for class certification. See Anwar, 2013 U.S. Dist. LEXIS 26088. Plaintiff simply lists his own claims in a conclusory manner and asks the Court to accept that the alleged 100 or so adjunct faculty present common questions of fact or law.

Moreover, plaintiff fails to even address the remainder of the class certification analysis. Specifically, plaintiff fails to assert how, if at all, his claims meet the requirements of "typicality" and "adequacy" required under Rule 23. See Fed. R. Civ. P. 23(a). "Rule 23(a) (3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Anwar, 2013 U.S. Dist. LEXIS 26088 (internal citation and quotation marks omitted). To meet the "adequacy" requirement, "the lead plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation, and the class representatives must not have interests conflicting with the class." Id. (internal citation and quotation marks omitted). Perhaps recognizing the weakness of his claim for class certification, plaintiff fails to even reference the "predominance"

and "superiority" requirements found in Rule 23(b). As such, the request for class certification under Rule 23 should be summarily denied.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant its motion to dismiss the Amended Complaint in its entirety and deny the relief requested therein, and grant such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         March 8, 2013

> MICHAEL A. CARDOZO
> Corporation Counsel of the
>   City of New York
> Attorney for Defendants
> 100 Church Street, Room 2-112
> New York, New York 10007-2601
> (212) 788-6838
> arizvi@law.nyc.gov
>
> By:   /S Asad Rizvi
>       _____
>       Asad Rizvi (AR-2964)
>       Assistant Corporation Counsel

Lawrence J. Profeta
Asad Rizvi,
        Of Counsel

16