UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. RONALD TONGRING,

       *Plaintiff,*

       - against -

BRONX COMMUNITY COLLEGE OF THE
CITY UNIVERSITY OF NEW YORK
SYSTEM, ANTHONY WEAVER, SUSAN
FORMAN,

       *Defendants.*
------------------------------------------------------------X

12 Civ. 6854 (ALC)(FM)

ORDER AND OPINION

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Nils Tongring ("Tongring" or "Plaintiff") brings this amended complaint against Defendants Bronx Community College, Anthony Weaver and Susan Forman ("Defendants"). Tongring brings claims for violation of the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL); the Age Discrimination in Employment Act of 1967 ("ADEA"); the New York State Human Rights Law ("NYSHRL"); New York City Human Rights Law ("NYCHRL") and libel, and seeks to bring a collective and class action on these bases. Defendants move for dismissal of the amended complaint in its entirety.

    Plaintiff was hired as an adjunct professor to teach two mathematics classes at Bronx Community College for Spring 2010. (Am. Compl. ¶ 8). As part of his job duties, Plaintiff conducted office hours for students, prepared and graded examinations and homework. Plaintiff alleges that he taught these classes competently but was terminated without cause and replaced by younger workers who were less qualified. Plaintiff contends that the cause of this termination were defamatory evaluations written by Defendants Weaver and Forman which were "patently false and a pretext for violation of the ADEA, the NYSHRL and the NYCHRL" and

1

"misunderstood and mischaracterized what was going on in the classroom." (Am. Compl. ¶ 33). Plaintiff alleges that he was not compensated for all hours he was required to work. (Am. Compl. ¶ 10) When he finally complained about this non-payment, his suspension from BCC was converted into a firing, allegedly in retaliation. (Am. Compl. ¶ 23). Defendant BCC informed Plaintiff that it would compensate Plaintiff for the amount he would have earned through the end of the semester only if Plaintiff signed a "do not darken my door clause," a lifetime ban on ever applying again for work at any college in the City University of New York system. (Am. Compl. ¶ 36).

## DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true, see Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)). However, the court need not accept allegations that are merely conclusions of law. Kassner, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action"). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is

entitled to offer evidence to support his claims." Fernandez, 471 F.3d at 51 (internal quotation marks and citation omitted).

I. Wage Violations under FLSA

Teachers are exempt from the FLSA minimum wage and maximum hour provisions, which do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity. . ." 29 U.S.C. § 213(a)(1). The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also means any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed. The term "educational establishment" is defined in § 541.204(b). 29 CFR § 541.303. An "educational establishment" means an elementary or secondary school system, an institution of higher education or other educational institution. 29 C.F.R. § 541.204. Under New York state law, a community college is considered an "institution of higher education." See McKinney's Education Law § 6202(4).[1]

Tongring contends that because he was not compensated on a salary or fee basis in an amount greater than $455 per week, exemption does not apply. See 29 CFR 541.300(a).

---

[1] McKinney's Education Law § 6202 reads in relevant part:

> The term "community college" shall mean an institution of higher education in the city of New York, which is governed and administered as such, by the board of trustees on July first, nineteen hundred seventy-nine, whose primary purpose is providing certificate and associate degree post secondary programs in general and technical educational subjects, and is receiving financial assistance from the state as a community college. Article one hundred twenty-six of this chapter shall continue to apply to such institutions but they shall hereafter be governed by the board of trustees in accordance with the provisions of this article.

N.Y. Educ. Law § 6202.

3

However, as Defendants point out, the salary threshold does not apply to teachers, i.e., those employees who are in a bona fide professional capacity "with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment." 29 CFR § 541.303(d). Therefore, Tongring is an exempt employee and cannot maintain a claim under the FLSA. Defendants' motion to dismiss the FLSA claim is granted.

II. Wage Violations under NYLL

Defendants contend that Plaintiff's NYLL claims must be dismissed because under the NYLL, "'Employee' includes any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work. . . by a federal, state or municipal government or political subdivision thereof." McKinney's Labor Law § 651(5)(n). The question is whether BCC constitutes "a federal, state or municipal government or political subdivision thereof." If so, Tongring as "an individual who is employed . . . by BCC," would be explicitly precluded from recovery under NYLL.

Defendants only tersely discuss why the NYLL claim should be dismissed, but seemingly would like the court to apply a recent analysis that a public benefit health care corporation constituted a political subdivision of municipal government. Memorandum at 12 (quoting Drayton v. MetroPlus Health Plan, Inc., 791 F. Supp. 2d 343, 345 (S.D.N.Y. 2011)). Tongring alleges that BCC is part of the City University of New York (CUNY) system (Am. Compl. ¶ 2) and makes allegations against CUNY more generally, (id. ¶¶ 13, 36). Applying the logic in Drayton, I conclude that BCC is a political subdivision of a municipal government, namely New York City.

4

Although there is no provided definition for "political subdivision," New York courts engage in a "particularized inquiry into the nature of the [organization] and the statute claimed to be applicable to it," Long Island R. Co. v. Long Island Lighting Co., 103 A.D.2d 156, 479 N.Y.S.2d 355, 361 (2d Dept.1984), "to determine whether—for the specific purpose at issue—the public benefit corporation ... perform[s] an essential government function ... [and therefore] should be treated like the State." Clark–Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 387, 521 N.Y.S.2d 653, 516 N.E.2d 190 (2d Dept.1987); Faculty Student Ass'n of State Univ. of Oneonta, Inc. v. Ross, 54 N.Y.2d 460, 463–64, 446 N.Y.S.2d 205, 430 N.E.2d 1258 (N.Y.1981) (court must consider "the nature of the employing organization" in determining whether an entity is a political subdivision under the New York Labor Law).

In summarizing Clark-Fitzpatrick, the Drayton court remarked that the public entity at issue—the Long Island Railroad—had been categorized as a political subdivision because of "the statutorily-determined public nature of the LIRR's operations, as well as the public source of much of its funding." Drayton, 791 F. Supp. 2d at 347. Applying those factors to the putative defendant in Drayton, Home Health Corporation and its subsidiary, the Drayton court held that it was properly considered a political subdivision because it performed an "essential public and governmental function" and "received a substantial amount of funding from public sources" See id. at 346-47. Drayton, however, also recognized that "under New York law, the fact that an entity is a public benefit corporation does not automatically render it a political subdivision." Id. at 346.

CUNY (and the individual colleges that comprise it) is not always deemed an agency of the state. Apollon v. Giuliani, 246 A.D.2d 130, 134-136, 675 N.Y.S.2d 38, 41- 42 (N.Y.A.D. 1 Dept. 1998) (reversing attorney fees award because CUNY was not a state agency for purpose of

attorney fees motion). Citing the Court of Appeals, Apollon noted that "a case-by-case determination" is necessary to decide "whether an entity like CUNY, which is independent of the State but is an instrumentality of the State and performs a 'fundamentally governmental' function, will be treated as a state for a particular purpose."[2] Id. at 135, 675 N.Y.S.2d at 41(citing John Grace & Co. v. State Univ. Constr. Fund, 44 N.Y.2d 84, 88, 404 N.Y.S.2d 316, 375 N.E.2d 377 (1978)).

Substituting BCC into the particularized inquiry, it becomes apparent that it is a political subdivision of, at a minimum, the city of New York. For one, CUNY colleges serve the essential government function of "meet[ing] the state's responsibility to provide post-secondary education in New York [C]ity beyond the associate degree level," N.Y. Educ. Law § 6201(1). More specifically, CUNY community colleges such as BCC serve a "primary purpose" of "providing certificate and associate degree post secondary programs in general and technical educational subjects," N.Y. Educ. Law § 6202.

Although CUNY is "an independent system of higher education governed by its own board of trustees responsible for the governance, maintenance and development of both senior and community college units of the city university," N.Y. Educ. Law § 6202, community

---

[2] Apollon, read in conjunction with Clissuras v. City Univ. of N.Y., 359 F.3d 79 (2d Cir.2004), appears to establish the dividing line between CUNY senior and community colleges: the former are treated as state agencies, while the latter are city agencies. Apollon, 246 A.D.2d at 135 ("Whether CUNY is more closely analogous to a State agency or to a City agency depends in part on whether the case involves senior colleges or community colleges."); Clissuras, 359 F.3d at 81 (holding that CUNY insofar as concerns its senior colleges is an arm of the state). The distinction, of course, is less relevant here where the exclusion extends to state and municipal governments alike and their respective political subdivisions.

colleges receive funding from the City and State, see N.Y. Educ. Law § 6304, and submit their annual budget to the mayor of New York City for approval, N.Y. Educ. Law § 6229(3).

Finally, parties seeking to bring suit against BCC must accord themselves with the same policies required before bring a claim against the city, such as filing a notice of claim, as Tongring has allegedly done. N.Y. Educ. Law § 6224(1) ("The provisions of sections 50-e and 50-i of the General Municipal Law shall. . . continue to apply to actions and proceedings based on a cause of action involving a community college of the city university of New York or an officer, agent, servant or employee of such community college acting in the course of his employment."). Indeed, this requirement has led many courts to recognize that New York City bears the financial responsibility for judgments against CUNY community colleges and their employees acting in their official capacity. Manolov v. Borough of Manhattan Community College, No. 12 Civ.1919(GBD)(FM), 2012 WL 6703570, at *8 (S.D.N.Y. Feb. 26, 2013) (adopting Report & Recommendation) (collecting cases). These factors suggest that BCC is a political subdivision of the city of New York and thus Tongring is excluded from the definition of "employee" under NYLL. Defendants' motion to dismiss is granted.

III. Retaliation

A. Retaliation under FLSA

Tongring specifically alleges retaliation in violation of the FLSA. (See Count 3, Am. Compl. ¶¶ 21-24). Although the other FLSA claims have been dismissed because teachers are exempt, that exemption only extends to minimum wage and maximum hour claims. See 29 U.S.C.A. § 213 ("The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) [minimum wage] and section 207 [maximum hours] of this title shall not apply with respect to-- any employee employed in a bona fide executive, administrative, or

7

professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools"). The fact that teachers cannot actually recover under the FLSA, however, does not mean that a teacher could not face retaliation for attempting to enforce the FLSA. In other words, although Tongring could not state a claim for violation of the FLSA, he could still conceivably successfully allege that he faced retaliation for filing a complaint "related to" the FLSA's purpose.

Under the anti-retaliation provision of the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." Kassman v. KPMG LLP, No. 11 Civ. 4753, 2013 WL 452913, at *15 (S.D.N.Y. Feb. 7, 2013) (quoting 29 U.S.C. § 215(a)(3)). To establish a *prima facie* case of retaliation under the FLSA, a plaintiff must allege "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010). Finally, to satisfy the anti-retaliation provision, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection" and may be either written or oral. Kasten v. Saint–Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1335, 179 L.Ed.2d 379 (2011).

Plaintiff alleges that he made a written demand for wages on April 16, 2010 for payment through the rest of the term (Am. Compl. ¶ 22). He alleges that on April 12, 2010, before the demand for payment, he was only on suspension. But "[o]n April 20, 2012 [sic], Plaintiff's April

8

12, 2012 [sic] suspension was converted to a firing." (Am. Compl. ¶ 23).[3] After April 20, 2012 [sic], Defendant BCC notified him that he would not be reappointed and would pay him for the remainder of the semester only if he agreed to a "do not darken my door clause." (Id.). Therefore, the motion to dismiss this claim is denied.

B. Retaliation under ADEA

To the extent Tongring also alleges retaliation in violation of the ADEA (see Am. Compl. ¶ 28, 38), he would need to allege substantially the same elements: that 1) he engaged in protected activity; 2) the employer was aware of this activity; 3) the employer took adverse action against the plaintiff; and 4) a causal connection exists between the protected activity and the adverse action. Uy v. Mount Sinai Hosp., No. 10 Civ. 5674(LAP), 2012 WL 4560443, at *6 (S.D.N.Y. Sept. 30, 2012) (citing Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)); id. ("A plaintiff engages in protected activity if []he has a reasonable belief that []he was opposing an employment practice made unlawful by. . . the ADEA.") (internal quotation marks omitted).

The protected activity prong is not met for an ADEA claim. Plaintiff contends that he was retaliated against in the form of being presented with a "do not darken my door clause" in his contract that prevented him from being paid after he was terminated as an adjunct. However, as Defendants point out, payment for services is not a protected activity under the ADEA and

---

[3] The timeline alleged by Plaintiff in Paragraph 23 of his Amended Complaint only accords with the rest of his complaint and the filing of this action (original complaint filed in the District of New Jersey on July 27, 2011 and transferred to this court on September 11, 2012) (see Dkt. No. 1), if the year "2012" was a typographical error and Plaintiff was actually alleging events in the year "2010". Reading the complaint in the light most favorable to Plaintiff, the Court presumes that the events in Paragraph 23 took place in April 2010.

9

cannot form the basis for a retaliation claim. Consequently, Plaintiff's ADEA retaliation claim must be dismissed.

IV. Age Discrimination Claims

A. Age Discrimination in Employment Act (ADEA)

In order to establish a prima facie case of improper age-based termination under the ADEA, 29 U.S.C. 621 et seq., Tongring must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010); Chukwueze v. NYCERS, 891 F .Supp. 2d 443, 455 (S.D.N.Y. 2012). As to the fourth element, "[b]ecause an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." Chukwueze, 891 F. Supp. 2d at 455 (quoting Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994)). Such evidence of discrimination might include more favorable treatment of employees not in the protected group or the sequence of events leading to the plaintiff's discharge. See id. Tongring has made these allegations. (See Am. Compl. ¶ 1, 7, 8, 29-33, 35-36). Accepting plaintiff's factual allegations as true, the plaintiff's amended complaint sets forth a claim for age discrimination. Therefore, Defendants' motion to dismiss the ADEA claim is denied.

B. Age Discrimination Under NYSHRL and NYSHRL

NYSHRL makes it unlawful for an employer "to discriminate against [an] individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age." N.Y. Exec. Law § 296 3-a. NYCHRL prohibits the same conduct. N.Y. City

Admin. Code § 8-107(1)(a). Age discrimination suits brought under New York State and City Human Rights Laws are subject to the same analysis as claims brought under the ADEA. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997)); see Hirschberg v. Bank of America, N.A., 754 F. Supp. 2d 500, 512 (E.D.N.Y. 2010) ("[a]ge discrimination claims brought pursuant to the NYSHRL . . . are analyzed under the ADEA framework.") (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009)). Because dismissal of NYSHRL and NYCHRL claims is only predicated on the insufficiency of the ADEA claim, the motion to dismiss these claims (Count V) is similarly denied.

V. Class Action

Tongring provides only a conclusory allegation that there are one hundred or more CUNY adjunct professors who would form a class for failure to pay under "do not darken my door" clauses. (Am. Compl. ¶ 51) for Counts I through V. As discussed above, minimum wage requirements under the FLSA and NYLL do not apply to teachers in an educational establishment and thus cannot be the basis for a class action claim. Furthermore, to the extent Tongring seeks to form a class for age discrimination, his class ambitions fare no better. His contention that "there was a pattern and practice of age discrimination by Defendant BCC and the City University of New York system to obtain a release under the ADEA that includes a "do not darken my door" clause," (Am. Compl. ¶ 36), is not sufficient where he does not allege that the putative adjunct professor class members otherwise qualify for protection under the ADEA (*i.e.*, are over 40 years of age). In any case, claims of discrimination and retaliation generally require an individualized inquiry and Tongring states no basis why this case is better suited for class, rather than individual, treatment. See Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541,

2550 (2011) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (internal citation and quotation marks omitted). For these reasons, class treatment is improper. The request to maintain this case as a class action is denied (Count VI).

VI. Libel/Defamation

Defamation—injury to one's reputation—by written expression is libel. See Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453, 458, 280 N.Y.S.2d 641, 644, 227 N.E.2d 572 (1967). To establish a prima facie case of personal injury based on the publication of libel or slander, a plaintiff must allege: 1) a false and defamatory statement of and concerning the plaintiff; 2) publication by defendant of such a statement to a third party; 3) fault on part of the defendant; and 4) injury to plaintiff. Idema v. Wager, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). As relevant here, a statement that "tend[s] to injure another in his or her trade, business or profession" is defamatory *per se*. Stern v. Cosby, 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009) (citing Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)).

However, Defendants allege that they have a qualified privilege to issue and distribute the employee evaluation. New York law grants a qualified "common interest" privilege to "defamatory communications made by one person to another upon a subject in which both have an interest." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145, 146 (2d Cir. 2001) (internal quotation marks omitted). To overcome the qualified privilege at the motion to dismiss stage, a plaintiff must plausibly allege that the defendant acted with malice, that is, "spite or a knowing or reckless disregard of a statement's falsity." Belsito Communications, Inc. v. Dell, Inc., No. 12–CV–6255 (CS), 2013 WL 4860585, at *9 (S.D.N.Y. Sept. 12, 2013) (citing Rosenberg v. MetLife, Inc., 8 N.Y.3d 359, 365 (2007)). Conclusory allegations of malice, unsupported by

12

facts, are insufficient to survive a motion to dismiss. Id. (citing Orenstein v. Figel, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009), where plaintiff "utterly failed to plead facts that could support his conclusory allegations regarding defendants' purported—and implausible—malice toward him").

Plaintiff alleges that the Defendants' evaluation harmed his profession as a mathematics instructor in the CUNY system. This is a per se defamatory statement. However, Plaintiff does not allege facts in his complaint that the defendant acted with malice. Although Plaintiff's opposition recognizes the necessity of malice to rebut a qualified privilege, it does not actually point to allegations of malice in the complaint sufficient to overcome the privilege. Therefore, the Court grants Defendants' motion to dismiss on the libel claim (Count VII). However, the Court will grant Plaintiff leave to amend the complaint to plead malice within thirty (30) days from the date of this Order.

## CONCLUSION

Defendants' motion to dismiss (Dkt. No. 39) is granted in part and denied in part. The Court dismisses Counts I, II, VI and VII. With respect to the defamation claim (Count VII), the Court grants Plaintiffs leave to amend the complaint within thirty (30) days from the date of this Order to plead malice. The claims for retaliation under FLSA (Count III) and age discrimination under ADEA, NYSHRL and NYCHRL (Counts IV and V) survive dismissal.

SO ORDERED.

Dated:   New York, New York
         February 4, 2014

**ANDREW L. CARTER, JR.**
United States District Judge